IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Gregory Paul Burgess and Jill Hudspeth Burgess, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| United States of America, | ) ) |
| Defendant. | ) ) ) |

1:21CV805

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Gregory Paul Burgess ("Mr. Burgess") and his wife Plaintiff Jill Hudspeth Burgess ("Mrs. Burgess") initiated this action against Defendant, the United States of America (the "Government"), under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging that Mr. Burgess suffered injuries while he was an inmate at Federal Corrections Complex Butner ("Butner FCC") due to the negligence of medical and administrative staff there. (ECF No. 11.) Before the Court is the Government's Motion to Dismiss, (ECF No. 12). For the reasons stated herein, the Government's motion will be granted in part and denied in part.

I. BACKGROUND

Plaintiff Mr. Burgess was an inmate at Butner FCC from December 2018 to July 2019. (ECF No. 11 ¶¶ 71, 173.) Plaintiffs allege that Mr. Burgess was reasonably healthy prior to incarceration and able to engage in normal physical activities, although he suffered from a

chronic and serious medical disorder; however, when he left the facility barely half a year later, he was totally disabled. (*Id.* ¶¶ 28–40, 177, 178.)

According to Plaintiffs, Mr. Burgess's severe deterioration was due to the negligence of healthcare providers who treated him at Butner FCC. (*Id.* ¶¶ 185–200.) These providers included, specifically, Dr. Michael Valdez (an attending physician who had primary responsibility for Mr. Burgess's care at Butner FCC) and Nurse Practitioner Jennifer Adkins (a mid-level practitioner who also had responsibility for Mr. Burgess's care and who was Mr. Burgess's primary point of contact with medical staff at Butner FCC). (*Id.* ¶¶ 17, 19, 45.)

Plaintiffs allege that the negligence of these individuals included, among other things, failure to prescribe for Mr. Burgess' treatment consisting of use of a medical "sequential compression device" ("SCD"). (*Id.* ¶¶ 186(k), 189(k).) Mr. Burgess had been using a set of SCDs prior to his incarceration, and a previous treating physician had determined that this specific treatment was important to stabilizing his condition. (*Id.* ¶ 61.) Relatedly, Plaintiffs also allege that Dr. Valdez and Nurse Adkins were negligent in that they failed to obtain Mr. Burgess's medical records, (*id.* ¶¶ 186(n), 189(n)), and Plaintiffs further allege negligence based on failures of administrative staff at Butner FCC who were involved with handling medical records, placing inmates in facilities able to provide medical care for their conditions, and similar functions, (*id.* ¶¶ 201–04).

In this action, Plaintiffs advance the foregoing allegations as five claims of medical, administrative, and common law negligence brought by Mr. Burgess against the Government under the FTCA, and a sixth claim for loss of consortium brought by Mrs. Burgess. (*Id.* ¶¶ 185–208.) The Government has moved to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. (ECF No. 12.)

## II.   STANDARD OF REVIEW

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A defendant may present a motion to dismiss for lack of subject matter jurisdiction either by contending that the complaint does not sufficiently allege jurisdiction, or by contending that the allegations in the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

If a defendant does not attack the truth of the allegations, a court takes them as true and "in effect, . . . afford[s] the same procedural protection as [the plaintiff] would receive under a Rule 12(b)(6) consideration." *Id.* If a defendant does attack the truth of the allegations, "the court may go beyond the allegations in the complaint and 'in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "Under such circumstances, the complaint's allegations ordinarily are not afforded a presumption of truthfulness." *Id.*

A court should grant a motion under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). If material jurisdictional facts are in dispute, then a court should order discovery rather than dismissal. *Rich*, 811 F.3d at 145.

3

### III. DISCUSSION

In this case, the Government contends that Plaintiffs' claims are predicated either on acts of an independent contractor rather than Government employees or on acts of decision-making that involve issues of public policy. (ECF No. 13 at 6–7.) Therefore, according to the Government, the independent contractor and discretionary function exceptions to FTCA liability apply and Plaintiffs' claims must be dismissed for lack of jurisdiction. (*Id.* at 3.)

Plaintiffs respond to the Government's independent contractor argument by contending that specific facts show that the actors who allegedly injured Mr. Burgess were agents of the Government rather than independent contractors. (ECF No. 16 at 16–21.) Plaintiffs respond to the Government's discretionary function argument by contending that although parts of one of their claims concededly involve public policy decision-making and are barred, nevertheless, their remaining claims, if properly construed, relate only to carrying out basic duties that have no public policy implications. (*Id.* at 22–23.)

"The FTCA represents a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* The law of the state where a tort allegedly occurred controls in an FTCA action—in this case, that means that North Carolina law controls. *Iodice v. United States*, 289 F.3d 270, 274 (4th Cir. 2002). There are, however, exceptions to the FTCA waiver, and when one of these exceptions applies, a court must dismiss a suit for lack of subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995); *see* 28 U.S.C. § 2680 (listing statutory exceptions to FTCA

4

liability).  "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and none of the [FTCA's] waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The Government has raised two exceptions—the independent contractor exception and the discretionary function exception—and the Court will address each in turn.

### A. The Court Lacks Evidence Necessary to Determine Whether the Independent Contractor Exception Applies to Dr. Valdez's Conduct

For the independent contractor exception, the Government contends this Court lacks subject matter jurisdiction over all claims that are "based on alleged tortious conduct of Dr. Valdez," because "at all relevant times, Dr. Valdez was a contract physician and not an employee of the United States."[1] (ECF No. 13 at 20.) According to the Government, Dr. Valdez worked for the University of Massachusetts Medical School ("UMASS") and was providing medical services at Butner FCC pursuant to a contract between UMASS and Butner FCC. (*Id.* at 22.) Plaintiffs respond that they have alleged specific facts that support that Dr. Valdez was an agent of the Government despite ostensibly working for UMASS. (ECF No. 16 at 20.) Plaintiffs contend these should be developed through discovery before the Court considers dismissing claims related to Dr. Valdez. (*Id.* at 21.)

---

[1] The counts based on the acts and omissions of Dr. Valdez are Count I for medical negligence and Count III for common law negligence. (ECF No. 11 at 71, 77.) Although there is some ambiguity in the Government's motion, the Court has construed the motion as not seeking dismissal of Counts II or IV based on the independent contractor exception. While these counts are similar to Counts I and III insofar as they are for medical negligence and common law negligence, they specify that they are "Against Jennifer Adkins, NP," (ECF No. 11 at 74, 77), and the Government has admitted that Nurse Adkins "was employed by the Bureau of Prisons," (ECF No. 14 ¶ 19). The Government also did not mention Nurse Adkins in its opening brief, and it did not respond to Plaintiffs raising this omission in their opposition. (ECF No. 16 at 16 (Plaintiff's point that Defendant did not argue that claims against Nurse Adkins must be dismissed under the independent contractor exception); ECF No. 17 at 1 (only mention of Nurse Adkins in Defendant's reply brief).)

5

"[T]he FTCA does not provide for liability of the United States for the acts or omissions of independent contractors." *Williams*, 50 F.3d at 305 (citing 28 U.S.C. § 2671). If an alleged tortfeasor "is an independent contractor, . . . and not an agent or employee of the United States, the United States has not waived its sovereign immunity," and a case must "be dismissed for want of jurisdiction." *Id.* at 304. For the purposes of the FTCA, "whether a person is a contractor, or an employee is determined under federal law." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

Federal law permits consideration of a number of factors in determining whether a person is a contractor or an employee, including those set out in the Restatement (Second) of Agency § 220(2). *Id.* at 889 & n.5. However, "'the critical factor in making th[e] determination is the authority' of the federal government 'to control the detailed physical performance of the contractor.'" *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 248 (4th Cir. 2018) (quoting *Logue v. United States*, 412 U.S. 521, 527–28 (1973)). The Fourth Circuit has held that in applying the control test, "the contract and its terms in fixing the relationship of the offending party are critical," *Wood v. Standard Prods. Co.*, 671 F.2d 825, 829 (4th Cir. 1982), and that "[a]pplication of the control test . . . properly includes analysis of the contractual relationship between the government and [an] allegedly negligent physician," *Robb*, 80 F.3d at 891.

At present, the Court cannot rule on the Government's motion because neither party has submitted a copy of the contract between Butner FCC and UMASS. Rather than submit this critical evidence, the Government has instead submitted a declaration of Andrew Stock, M.D., the Clinical Director at the Federal Medical Center in Butner FCC, purporting to describe the contract. (ECF No. 13-1.) The Court has an "independent obligation to assess

6

its subject-matter jurisdiction." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). The Court cannot fulfill its obligation to determine its jurisdiction based only on a declaration when the actual contract is presumably available.[2] *See* 2 McCormick on Evid. § 232 (8th ed.) ("[P]resenting to a court the exact words of a writing is of more than average importance, particularly in the case of operative or dispositive instruments such as . . . contracts, where a slight variation of words may mean a great difference in rights."); 31 Victor J. Gold, *Federal Practice & Procedure Evidence* § 7182 (2d ed.) (describing how resorting to "[s]econdary evidence concerning the contents of a [contract] . . . can threaten accurate fact-finding").

The Court will therefore defer ruling on whether it has jurisdiction over claims against the Government predicated on Dr. Valdez's conduct. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 ("The district court may postpone a decision on the question of subject matter jurisdiction . . . [to] seek the presentation of affidavits or other evidence on the matter by the parties if none have been tendered or if those that have been offered by the parties are inconclusive."). The Government may renew its motion as it relates to Dr. Valdez and its independent contractor contention, supported by appropriate evidence, when discovery is completed.

### B. The Discretionary Function Exception Does Not Bar Plaintiffs' Claims Based on Negligent Failure to Obtain and Transmit Medical Paperwork

For the discretionary function exception, the Government primarily contends that this exception bars Count V, which is a claim for administrative negligence, in its entirety. (ECF No. 13 at 2.) The Government argues that this count is barred because it relates to "Mr.

---

[2] The Court is aware of at least one other case where the Government filed a copy of a contract between FCC Butner and UMASS to support its position that a physician working at FCC Butner was a UMASS independent contractor. *Krembel v. United States*, 837 F. App'x 943, 950 n.7 (4th Cir. 2020).

7

Burgess' assignment, placement, and the perceived deficiencies in the capabilities of or decisions by the employees [the Government] hired to provide healthcare at Burgess' assigned prison location." (ECF No. 17 at 8.) Plaintiffs concede that some portions of Count V relate to inmate assignment within the BOP system and selection of BOP employees and those portions are therefore barred, but Plaintiffs nevertheless maintain that other portions of Count V relate only to failures to perform ministerial tasks and are not barred. (ECF No. 16 at 22–23.)

The Court finds barred the portion of Count V that Plaintiffs concede is barred. However, the Court finds that the remainder of Count V does not have any relationship to public policy and thus the Government is not shielded by the discretionary function exception with respect to that remainder.

The discretionary function exception "insulates the United States from liability for its agents and employees' performance of duties involving discretionary decisions." *Williams*, 50 F.3d at 308. It "provides that agents and employees of the United States will not be held liable for their challenged conduct if performance of their duties necessarily involves making decisions that are grounded in public policy." *Id.* at 308–09. "The purpose of the exception is 'to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 309 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

Although the exception has "a fluid quality that escapes particular confinement," courts follow a two-step test to determine if the discretionary function exception applies. *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).

"First, the exception only applies to acts or omissions that are discretionary in nature, *i.e.*, those involving judgment or choice. If the challenged action is prescribed, and thus does not involve making choices, the exception is unavailable." *Id.* This inquiry "boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993). "If such a mandatory statute, regulation, or policy applies, then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary." *Id.* In such a case, "the government actor 'has no rightful option but to adhere to the directive,' and if the plaintiff can show that the actor in fact failed to so adhere to a mandatory standard, then the claim does not fall within the discretionary function exception." *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

However, "[i]f no such mandatory statute, regulation, or policy applies to remove the challenged conduct from the choice and judgment of the government," then a court advances to the second step of the analysis. *Id.* In second step, a court asks, "whether the choice or judgment involved is one 'based on considerations of public policy.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 537). An example of an exercise of choice or judgment that is not based on considerations of public policy is driving a car—if a Government official is driving a car while on Government business and negligently collides with another car, the discretionary function exception does not apply to protect the Government from suits brought by victims of the crash because "[a]lthough driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.* (quoting *Gaubert*, 499 U.S. at 325 n.7).

"For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324–25. "The focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

Here, the Court begins its analysis with the portions of Count V that Plaintiffs concede are barred. Both the Government and Plaintiffs agree that any claim based on Mr. Burgess's "assignment, placement or the employees hired to provide care to [him] . . . would be precluded by the discretionary function exception." (ECF Nos. 16 at 22; 13 at 10–17.) A large body of case law supports this proposition.[3] Plaintiffs accept that this argument "could be made" as to two paragraphs in Count V that claim the Government breached duties to Mr. Burgess "by failing to have in place at his assigned placement [the] proper level of care commiserate to his medical needs . . . and as medically necessary," and "by failing to have in place a multidisciplinary team of healthcare providers who understood Mr. Burgess' unique medical conditions and were sufficiently capable to address his medical needs." (ECF No. 11 ¶ 203(b), (c) (cited at ECF No. 16 at 22).) In addition to conceding that these claims "could" be barred, Plaintiffs have not presented any argument that these claims are not barred. (*See* ECF No. 16 at 22–23.) Because it is Plaintiffs' burden to show that exceptions to the FTCA's

---

[3] *See, e.g., Cook v. United States*, No. 11-2669, 2012 WL 5398184, at *4 (D.S.C. Oct. 3, 2012) ("[C]ourts considering decisions regarding the classification or transfer of a federal prisoner have determined that these decisions fall within the discretionary function exception." (collecting cases)), *report and recommendation adopted*, No. 11-2669, 2012 WL 5398181 (D.S.C. Nov. 2, 2012), *aff'd*, 519 F. App'x 197 (4th Cir. 2013); *Neal v. United States*, No. CV 19-1033, 2019 WL 6341622, at *12 (D. Md. Nov. 27, 2019) (noting "longstanding Fourth Circuit precedent . . . indicates that the FTCA's discretionary function exception bars . . . claims for negligent hiring, retention, and supervision").

10

waiver of sovereign immunity do not apply, *Welch*, 409 F.3d at 651, the Court will dismiss these claims.

Turning to the part of Count V that Plaintiffs do defend, this portion contains claims that Government employees breached duties to Mr. Burgess by "failing to gather [his] historical medical records," and "by failing to give instruction to medical staff . . . [about] Mr. Burgess' unique medical needs." (ECF No. 11 ¶ 203 (a), (d) (cited at ECF No. 16 at 22).)

The Government argues that, like the claims that Plaintiffs concede are barred, these claims are based on discretionary decisions related to assigning Mr. Burgess to a facility within the BOP system and on employee hiring and supervision. (ECF Nos. 13 at 11–13; 17 at 10.) Plaintiffs respond that their claims are cognizable as claims for administrative or corporate negligence under North Carolina law because they allege that Government employees owed Mr. Burgess an ordinary duty of care, and that they breached this duty by not obtaining his medical records and by not relaying his medical information to other staff at the prison.[4] (ECF No. 16 at 22–23.) According to Plaintiffs, these are claims of "active ministerial failures" that "on their face show[] no indicia of . . . considerations of public policy" and therefore are not barred by the discretionary function exception. (*Id.*)

---

[4] The Government has argued in its reply brief that insofar as Plaintiffs have described their Count V claims as "corporate negligence" claims, such claims are outside the Court's jurisdiction because the FTCA allows only claims that arise from "an 'act or omission of any employee of the Government'" and a theory of "corporate negligence" seeks to hold the Government liable for the actions of a corporation rather than a person. (ECF No. 17 at 9.) This argument misapprehends the claim of corporate negligence under North Carolina law, which only "charge[s] [a] hospital with liability for its employees' violations of duties owed directly from the hospital to the patient." *Clark v. Perry*, 442 S.E.2d 57, 65 (N.C. Ct. App. 1994); *see also Blanton v. Moses H. Cone Mem'l Hosp., Inc.*, 354 S.E.2d 455, 457 (N.C. 1987) ("[A] hospital . . . may . . . be liable if, through a person who is an agent of the hospital it has breached a duty it owes to a patient. This is what has been called corporate negligence. [It] is no more than the application of common law principles of negligence. . . .").

Initially, the Court declines the Government's invitation to treat Plaintiffs' remaining claims in Count V as merely variations on Plaintiffs' claims relating to inmate placement and hiring and supervision of staff. Plaintiffs have alleged that certain Government employees had an ordinary duty of care that obligated them to collect and transmit paperwork, and that they failed to do so. (ECF No. 11 ¶ 202.) This is not the same as an allegation that these employees were obligated to render a particular decision regarding where Mr. Burgess would be placed, or which doctors would be part of his medical team.

With this understanding of Plaintiffs' claims, the Court turns to the two-step discretionary function test. At the first step, the Court finds that the activities at issue did require the use of judgement because Plaintiffs have not identified any policy that mandates any employee of the Government acquire a patient's medical records or convey any information to prison medical staff. At the second step, however, the acts and omissions alleged by Plaintiffs do not implicate any policy considerations. Notably, although the Government asserts that "the gathering and dispensing of information related to incoming inmates, including an inmates' [sic] medical needs" require "policy judgments," the Government has not specifically identified what sort of public policy is implicated by these seemingly ministerial tasks. (ECF No. 17 at 11.) A Government employee's failure to process paperwork or to forward a communication to an appropriate party is more akin to driving and negligently crashing a car than it is to a public policy decision. *See Gaubert*, 499 U.S. at 325 n.7 (explaining negligent driving example). Accordingly, the Court finds that the discretionary function exception does not bar the contested administrative negligence claims.

The Court will therefore grant the Government's motion as to subparagraph's (b) and (c) of paragraph 203 in Plaintiffs' First Amended Complaint, and the Court will deny the

12

Government's motion as to subparagraphs (a) and (d) of that paragraph.  However, the Government may renew its motion to dismiss against the subparagraph (a) and (d) claims after they have been developed in discovery if it appears at that later time that they do have an articulable connection to public policy.

### C. Plaintiffs Do Not Allege Liability Based on Mr. Burgess Not Being Permitted to Bring Medical Devices into a Prison

Having addressed the Government's primary discretionary function argument, the Court now turns to the Government's contention that "BOP's decision not to allow Mr. Burgess to bring a sequential compression device into Butner is barred by the discretionary function exception." (ECF No. 13 at 17.)  Plaintiffs respond that they have not brought claims based on Butner FCC prohibiting Mr. Burgess from bringing his own personal SCDs into prison with him when he self-surrendered; instead, according to Plaintiffs, their claims are based on medical personnel failing to prescribe any institutional SCDs for Mr. Burgess once he was in custody.  (ECF No. 16 at 22.)

The Court finds that the Plaintiffs' claims related to SCDs are based on alleged failures of a healthcare professional to prescribe proper medical treatment when he was an inmate and not on any refusal to allow Mr. Burgess to bring a device into a prison when he self-surrendered.  Therefore, there is no need for extensive legal analysis of this issue.

The Government has acknowledged that "Plaintiffs' Amended Complaint asserts that their claims regarding Mr. Burgess's SCD relate to the alleged 'failure *by medical* to provide him with . . . SCDs' and 'not that he was denied the use of his own SCDs.'" (ECF No. 13 at 17 (quoting ECF No. 11 ¶ 52 (emphasis in ECF No. 13)).)  This characterization of the claims in this case is supported by other plain and unambiguous language in the Complaint.  (ECF No. 11 ¶ 189(k) (claiming medical negligence based on the "fail[ure] [of Nurse Adkins] to recognize

13

Mr. Burgess' medical needs for the use of [SCDs], and give orders for Burgess' use of [SCDs] and provide Mr. Burgess with [SCDs] through the prison system"); *id.* ¶ 199 (claiming common law negligence based on the failure of Nurse Adkins to "exercise reasonable care and diligence in [her] application of [her] knowledge and skill to Mr. Burgess' care and [to] use [her] best judgment in the treatment and care of Mr. Burgess").) Accordingly, the Government's contrary interpretation that the refusal to allow Mr. Burgess's personal devices into the prison as the issue here is not well-founded.

The Government's contrary interpretation is based on certain factual allegations in the First Amended Complaint that describe how there were expectations during sentencing that Mr. Burgess would be allowed to bring his own SCDs into prison but these expectations were thwarted when he had to leave the devices outside the prison when he self-surrendered. (ECF No. 13 at 17 (describing how Plaintiffs amended their Complaint to clarify that their SCD claims were related to a failure to provide SCDs, but noting that "the Amended Complaint retains . . . allegations regarding the discussion of Mr. Burgess's SCDs in his sentencing process and decisions by non-medical personnel at Butner not to allow him to bring his SCD with him into the facility" (citing ECF No. 11 ¶¶ 65–67, 69–71, 78, 87, 91).) However, because the formal counts of the First Amended Complaint ground liability on a failure of a healthcare professional to prescribe SCDs rather than on a failure of prison staff to allow specific devices into Butner FCC, (*see id.* ¶¶ 189–190, 197–200), there is no reason to construe these factual allegations in Plaintiffs' 81-page First Amended Complaint as anything except in the context necessary to understand this case.

Because the Court finds that the Government is moving against a theory of liability not pled in the First Amended Complaint (and one which Plaintiffs have explicitly disclaimed

14

pursuing, (*see* ECF Nos. 11 ¶ 52; 16 at 22)), there is no need for the Court to address whether the discretionary function exception might bar this theory.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that the Government's Motion to Dismiss, (ECF No. 11), is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to paragraphs 203 (b) and (c) of Count V. The remainder is **DENIED** without prejudice.

This, the 15th day of March 2023.

/s/ Loretta C. Biggs
United States District Judge